**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CONOCOPHILLIPS ALASKA, INC.,

*Plaintiff-Appellee*,

v.

ALASKA OIL AND GAS
CONSERVATION COMMISSION,

*Defendant-Appellant*.

No. 23-35512

D.C. No.
3:22-cv-00121-
SLG

OPINION

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, Chief District Judge, Presiding

Argued and Submitted May 20, 2024
Submission Vacated May 21, 2024
Resubmitted May 27, 2026
Anchorage, Alaska

Filed May 27, 2026

Before: Jay S. Bybee, Michelle T. Friedland, and Eric D.
Miller, Circuit Judges.

Opinion by Judge Miller

# SUMMARY[*]

## Oil & Gas Law / Preemption

The panel reversed the district court's summary judgment in favor of ConocoPhillips Alaska, Inc., an oil and gas producer that sought declaratory relief under the federal Naval Petroleum Reserves Production Act, preventing Alaska's Oil and Gas Conservation Commission from disclosing well data that the company sought to keep confidential.

An Alaska statute required the Commission to release the data, which concerned oil and gas wells that ConocoPhillips, under permits obtained from Alaska, had drilled in the National Petroleum Reserve-Alaska.  The district court entered judgment for ConocoPhillips, holding that the Commission could not release the data because federal law preempted the Alaska statute.

Reversing, the panel held that the federal Production Act does not expressly preempt the Alaska statute because the Production Act neither contains nor references any clear statement of preemption.  The panel held that Department of the Interior regulations also do not expressly preempt the Alaska statute.  The panel further held that the Production Act does not impliedly preempt the Alaska statute's disclosure provisions because the Production Act does not evince a congressional purpose that would be obstructed by the Alaska statute.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Kevin M. Cuddy (argued), Whitney A. Brown, and Connor R. Smith, Stoel Rives LLP, Anchorage, Alaska, for Plaintiff-Appellee.

David A. Wilkinson (argued), Senior Assistant Attorney General, Office of the Alaska Attorney General, Anchorage, Alaska, for Defendant-Appellant.

Christopher Anderson and John E. Bies, Attorneys, Environment & Natural Resources Division; Todd Kim, Assistant Attorney General; United States Department of Justice, Washington, D.C.; Michael S. Gieryic and Nicholas C. Moore, Attorney-Advisors, Office of the Solicitor, United States Department of the Interior, Washington, D.C.; for Amicus Curiae United States of America.

**OPINION**

MILLER, Circuit Judge:

ConocoPhillips Alaska, Inc., an oil and gas producer, sued to prevent Alaska's Oil and Gas Conservation Commission from disclosing well data that the company sought to keep confidential. The district court entered judgment for ConocoPhillips, holding that the Commission could not release the data because federal law preempts the Alaska statute requiring it to do so. But federal law neither expressly preempts the statute nor evinces a congressional purpose that would be obstructed by it. We reverse.

I

The National Petroleum Reserve–Alaska is the largest single unit of public land in the United States, comprising nearly 24 million acres of the North Slope of Alaska. *See Northern Alaska Env't Ctr. v. Kempthorne*, 457 F.3d 969, 973 (9th Cir. 2006). The Reserve was originally set aside for the United States Navy in 1923, but after more than 50 years it remained "largely unexplored and almost completely undeveloped." H.R. Rep. No. 94-156, at 3 (1975); *see* Exec. Order No. 3797-A (Feb. 27, 1923). In 1976, Congress transferred authority over the Reserve to the Department of the Interior by enacting the Naval Petroleum Reserves Production Act of 1976, § 103, Pub. L. No. 94-258, 90 Stat. 303 (codified at 42 U.S.C. § 6503). In a later amendment to the Production Act, Congress opened the Reserve to private oil and gas exploration. Pub. L. No. 96-514, 94 Stat. 2957, 2964–65 (1980) (codified as amended at 42 U.S.C. § 6506a).

Although it is federal property, the Reserve is subject to Alaska's jurisdiction because it is within the State's

territorial bounds. *See Kleppe v. New Mexico*, 426 U.S. 529, 543 (1976). The Alaska Oil and Gas Conservation Commission oversees oil and gas operations within Alaska, including within the Reserve. Alaska Stat. §§ 31.05.027, 31.05.030; *see Alaskan Crude Corp. v. State, Dep't of Nat. Res., Div. of Oil & Gas*, 261 P.3d 412, 414 n.3 (Alaska 2011). Under Alaska law, companies seeking to drill in the Reserve must obtain a permit from the Commission. Alaska Stat. § 31.05.090. When companies finish drilling an oil or gas well, they are required to file data and reports describing the well. *Id.* § 31.05.035(a), (b). The Commission must keep those reports confidential for 24 months after they are filed—or for longer if the Alaska Department of Natural Resources finds that they contain "significant information relating to the valuation of unleased land in the same vicinity." *Id.* § 31.05.035(c). After the period of confidentiality ends, the Commission discloses the reports to the public. *See* Alaska Admin. Code tit. 20, § 25.537(a), (d).

ConocoPhillips leased Reserve land from the United States, obtained permits from Alaska to drill on that land, and finished drilling several wells. To comply with the terms of its leases and the Production Act, ConocoPhillips submitted well data to the Department of the Interior. To comply with Alaska law, ConocoPhillips submitted a subset of that data to the Commission.

According to ConocoPhillips, disclosure of the well data would reveal trade secrets, resulting in a substantial loss of economic value to the company. ConocoPhillips asked the Alaska Department of Natural Resources to continue to keep the data confidential after the expiration of the 24-month period, but the Department denied the request.

ConocoPhillips then brought this action for injunctive and declaratory relief against the Commission, arguing that the Production Act preempts Alaska's confidentiality laws and that the Commission therefore cannot disclose the company's well data without the company's consent. The Commission moved to dismiss, and ConocoPhillips moved for partial summary judgment on its claims for declaratory relief. The district court denied the motion to dismiss, granted partial summary judgment, and, with the consent of the parties, entered final judgment for ConocoPhillips.

The district court held that the Production Act does not expressly preempt Alaska law but that federal law nevertheless impliedly preempts Alaska's disclosure provisions. Focusing on a report prepared by the Department of the Interior at Congress's request, the court determined that "Congress recognized the need to keep exploration information confidential in a private leasing program" in order to "promote the expeditious private exploration of" the Reserve. The court concluded that disclosing well data after two years would obstruct that purpose by discouraging private exploration, and that the Production Act therefore preempts Alaska law.

We review the district court's preemption determination de novo. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1211 (9th Cir. 2020).

## II

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Accordingly, "[i]f federal law 'imposes restrictions or confers rights on

private actors' and 'a state law confers rights or imposes restrictions that conflict with the federal law,' 'the federal law takes precedence and the state law is preempted.'" *Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (quoting *Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018)).

Two theories of preemption matter for this case. "Express" preemption means that Congress can "preempt state law by enacting a clear statement to that effect." *In re Volkswagen*, 959 F.3d at 1211; *see Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203 (1983). But even if no federal statute expressly preempts state law, "obstacle" preemption means that state law is unenforceable when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *In re Volkswagen*, 959 F.3d at 1212 (quoting *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015)).

## A

ConocoPhillips argues that the Production Act expressly preempts Alaska law. That argument gets off to a difficult start because the Production Act does not have a preemption clause. ConocoPhillips acknowledges that problem but says that the Production Act incorporates the preemption clause from a different statute. Specifically, the Production Act provides that private parties "may conduct geological and geophysical explorations in" the Reserve with permission of the Secretary of the Interior, and that "[a]ny information acquired in such explorations shall be subject to the conditions of 43 U.S.C. 1352(a)(1)(A)." 42 U.S.C. § 6506a(m).

The cross-referenced provision, section 1352(a)(1)(A), is part of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.*, which governs submerged lands off the coast of the United States and beyond the jurisdiction of any State. *See* 43 U.S.C. § 1331(a). Unlike on the Reserve, "all law on the [Outer Continental Shelf] is federal law, administered by federal officials." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 604 (2019).

Here ConocoPhillips's argument encounters a second difficulty, which is that the cross-referenced provision of OCSLA *also* does not say anything about preemption. Instead, it states:

> Any lessee or permittee conducting any exploration for, or development or production of, oil or gas pursuant to this subchapter shall provide the Secretary [of the Interior] access to all data and information (including processed, analyzed, and interpreted information) obtained from such activity and shall provide copies of such data and information as the Secretary may request. Such data and information shall be provided in accordance with regulations which the Secretary shall prescribe.

43 U.S.C. § 1352(a)(1)(A). Section 1352(a)(1)(A) thus does no more than impose data-submission requirements on lessees—namely, that they must provide the federal government with "access to all data and information . . . obtained from" oil and gas exploration and with any "copies of such data and information" that the government requests. *Id.*

Undaunted, ConocoPhillips argues that because the Production Act states that information acquired while exploring the Reserve is "subject to *the conditions of* 43 U.S.C. 1352(a)(1)(A)," and not merely "subject to 43 U.S.C. 1352(a)(1)(A)," the Production Act actually incorporates additional sections of OCSLA relating to oil and gas exploration information. Those impliedly incorporated provisions, ConocoPhillips says, include section 1352(g), which states that "[a]ny provision of State or local law which provides for public access to any privileged information received or obtained by any person pursuant to this subchapter is expressly preempted by the provisions of this section, to the extent that it applies to such information."

We think the Production Act means what it says: It incorporates the conditions on oil and gas exploration contained in section 1352(a)(1)(A)—the data-submission requirements—and no more. "Congress's choice to include a cross-reference to one but not the other of the [statute's] neighboring [provisions] strongly suggests it acted 'intentionally and purposefully in the disparate' decisions." *Azar v. Allina Health Servs.*, 587 U.S. 566, 577 (2019) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). The Production Act does not incorporate section 1352(g).

ConocoPhillips asks us to define "the conditions of" as "the circumstances attendant to," and it argues that the circumstances attendant to "data and information obtained . . . from oil or gas exploration" and transmitted under section 1352(a)(1)(A) include the other information requirements of OCSLA. It notes that the same result can be reached by defining "conditions" as "stipulations" and treating the other provisions in section 1352 as stipulations on information acquired during oil and gas exploration on the Reserve. But the meaning of "conditions" in the

Production Act is far more straightforward. A condition, in this context, is "a premise upon which the fulfillment of an agreement depends." *Merriam-Webster's Collegiate Dictionary* 259 (11th ed. 2014). OCSLA premises oil and gas leases upon lessees' adherence to data-submission requirements; if lessees do not meet those requirements, they have failed to fulfill their agreements with the United States. "[T]he conditions of" section 1352(a)(1)(A), therefore, are simply the data-submission requirements contained within that section. 42 U.S.C. § 6506a(m).

ConocoPhillips asserts that our interpretation renders the phrase "the conditions of" superfluous. That is incorrect. Section 1352(a)(1)(A) itself applies only to information acquired while exploring the Outer Continental Shelf, so a provision of the Production Act stating that data collected from the Reserve "shall be subject to 43 U.S.C. 1352(a)(1)(A)" could be interpreted to apply to no data at all. That is because information acquired while exploring the Reserve is not information acquired while exploring the Outer Continental Shelf. By including the words "the conditions of," Congress made clear that it was incorporating section 1352(a)(1)(A)'s data-submission requirements into the statute that governs oil and gas exploration on the Reserve.

Congress's decision not to apply other provisions of OCSLA to the Reserve is hardly surprising. Unlike the Outer Continental Shelf, which is an area of exclusive federal jurisdiction, 43 U.S.C. § 1331(a); *see Parker Drilling Mgmt. Servs.*, 587 U.S. at 604, the Reserve is subject to Alaska's concurrent jurisdiction. Because States lack inherent power to gather data from private oil and gas exploration on the Outer Continental Shelf, Congress included provisions in OCSLA that make data submitted to the federal government

available to States, so that States have access to exploration data that might affect them. *See* 43 U.S.C. § 1352(b), (d). Although Congress provided for the sharing of that data with States, it also restricted the authority of States to disclose it. *See*, *e.g.*, 43 U.S.C. § 1352(g).

On the Reserve, by contrast, Alaska has its own authority to gather—and disclose—data collected from oil and gas exploration, authority that it exercised even before Congress opened the Reserve to private exploration. *See* 1970 Alaska Sess. Laws ch. 209, § 2. The confidentiality restrictions in the other subsections of section 1352 pertain only to data transmitted under section 1352(a)(1)(A). *See* 43 U.S.C. § 1352(c) (directing the Secretary of the Interior to "prescribe regulations to . . . assure that . . . the confidentiality of privileged or proprietary information received by the Secretary under this section"); *id.* § 1352(g) (preempting state laws that provide for the disclosure of "privileged information received or obtained by any person pursuant to this subchapter"). Even incorporating additional sections of OCSLA would not affect Alaska's ability to gather data itself and therefore would not impair the State's ability to disclose that data on its own terms. Instead, the logical choice was to incorporate only section 1352(a)(1)(A)—thereby ensuring that the federal government has access to oil and gas information acquired during exploration on the Reserve—and no other provisions of OCSLA. That is precisely what the Production Act does.

Because the Production Act neither contains nor references any "clear statement" of preemption, *In re Volkswagen*, 959 F.3d at 1211, it does not expressly preempt Alaska law.

B

Even if the Production Act does not expressly preempt Alaska law, ConocoPhillips says that Department of the Interior regulations do. ConocoPhillips points specifically to 30 C.F.R. § 552.6(b), under which "no data or information determined by the director [of the Bureau of Ocean Energy Management] to be exempt from public disclosure" under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, "shall be provided . . . to the public" without the lessee's consent. FOIA exempts from public disclosure "geological and geophysical information and data . . . concerning wells." 5 U.S.C. § 552(b)(9).

The regulation no more preempts state law than does the statute it implements. For a federal regulation to preempt state law, "it must fall 'within the scope of the [federal agency's] delegated authority,'" and "the agency must have 'meant to pre-empt' state law." *Cohen v. Apple Inc.*, 46 F.4th 1012, 1028 (9th Cir. 2022) (first quoting *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1208 (9th Cir. 2009) (alteration in original); and then quoting *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1117 (9th Cir. 2020)). Section 552.6(b) does not satisfy that standard.

Section 552.6(b) does not apply to data gathered on the Reserve. OCSLA, not the Production Act, is the source of the Department of the Interior's authority to promulgate section 552.6(b). *See Reorganization of Title 30: Bureaus of Safety and Environmental Enforcement and Ocean Energy Management*, 76 Fed. Reg. 64,432, 64,671–72 (Oct. 18, 2011). The regulation is part of a set of "procedures and requirements for the submission of oil and gas data and information resulting from exploration, development, and

production operations on the *Outer Continental Shelf . . . .*"
30 C.F.R. § 552.1 (emphasis added).

Nonetheless, reprising its primary express-preemption argument, ConocoPhillips asserts that because the Production Act applies "the conditions of 43 U.S.C. 1352(a)(1)(A)" to data that lessees collect while exploring the Reserve, and because section 1352(a)(1)(A) subjects data that lessees collect while exploring the Outer Continental Shelf to "regulations which the Secretary [of the Interior] shall prescribe," the Production Act makes the confidentiality regulations for the Outer Continental Shelf applicable to the Reserve. As the United States points out in its amicus brief, however, the regulation was adopted not under section 1352(a)(1)(A) but instead under section 1352(c), which authorizes the Secretary to promulgate rules to guarantee "the confidentiality of privileged or proprietary information received" under section 1352(a). And as we have explained, "the conditions of" section 1352(a)(1)(A) include only the data-submission requirements of that provision. The "conditions" do not extend to other subsections of the same statute and certainly do not include agency rules promulgated under other subsections.

In any event, section 552.6(b) governs only the Department of the Interior's handling of information submitted to it. Nothing in that provision purports to regulate the State's handling of information that it received independently.

ConocoPhillips argues that section 552.6(b) must apply to Reserve data because otherwise Reserve "explorers' data would be entitled to no confidentiality protection at all," a result ConocoPhillips views as intolerable. But "no amount of policy-talk" can displace the plain text of the statute or of

the regulation. *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021). In any event, at least as far as the federal government is concerned, ConocoPhillips is incorrect that there is no confidentiality protection for explorers' data. ConocoPhillips's leases, for example, require the United States to keep well data it receives from the company "closed to inspection by the public in accordance with the Freedom of Information Act" through the duration of the lease. *See* 5 U.S.C. § 552(b)(9). In other words, the United States has contractually agreed not to disclose any well data covered by a FOIA exemption. But a federal commitment not to disclose data obtained under its contracts does not preempt a State's decision to disclose data obtained under its own laws.

## C

ConocoPhillips next argues that Alaska law is impliedly preempted because it poses an impermissible obstacle to accomplishing the purposes of the Production Act. "The Supreme Court has found obstacle preemption in only a small number of cases" of two specific types: those where "the federal legislation at issue involved a 'uniquely federal area[] of regulation'" and state law "directly interfered with the operation of the federal program," and those where "a federal enactment clearly struck a particular balance of interests that would be disturbed or impeded by state regulation." *In re Volkswagen*, 959 F.3d at 1212 (alteration in original) (quoting *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 604 (2011)). "The mere fact that there is tension between federal and state law is not enough to establish" obstacle preemption. *MetroPCS*, 970 F.3d at 1118 (internal quotation marks and brackets omitted).

To evaluate an obstacle preemption argument, "we begin with the text and structure of" the relevant federal statute,

considered "in light of the presumption that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." *In re Volkswagen*, 959 F.3d at 1219 (internal quotation marks omitted). The parties debate whether this case implicates Alaska's historic police powers and, thus, the presumption against preemption. The Commission points to Alaska's longstanding regulation of oil and gas exploration within its borders. ConocoPhillips responds that the relevant power— that of controlling oil and gas exploration *data*—has no historical grounding, and that the presumption against preemption does not apply because regulation of oil and gas drilling on federal land is "an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000). *But see Tohono O'odham Nation v. City of Glendale*, 804 F.3d 1292, 1298 n.1 (9th Cir. 2015) ("[W]e [have] distinguished *Locke* by limiting its holding to cases of field preemption . . . ."). We need not resolve that debate because even without the benefit of the presumption against preemption, we see no conflict between Alaska law and the purposes of the Production Act.

The Production Act—which sets out how the federal government can grant private parties oil and gas leases for the Reserve—is silent on data confidentiality. *See* 42 U.S.C. § 6506a. Instead, it addresses other aspects of exploration and leasing: It requires Interior's leasing program to be "expeditious" and "competitive," *id.* § 6506a(a); it establishes the timing and methods of lease sales, *id.* § 6506a(d), (f); it specifies allowable lease terms and renewal conditions, *id.* § 6506a(i); it grants Alaska half of the money received from the leases, *id.* § 6506a(*l*); and it authorizes the Department of the Interior to promulgate regulations for the protection of the Reserve's surface

environment, *id.* § 6506a(b). As we have explained, it also incorporates OCSLA's requirement that lessees provide the Department of the Interior with the data that they collect from exploration of the Reserve. *Id.* § 6506a(m). But nothing in the statute points to a congressional purpose to maintain the confidentiality of Reserve exploration data for any particular period of time.

ConocoPhillips asks us to infer such a purpose from Congress's broader goal of encouraging rapid private exploration and production in the Reserve. But data confidentiality can do as much to impede as to promote private exploration of oil and gas resources. On the one hand, confidentiality can encourage companies to conduct exploration by increasing their potential profit from the data they gather. On the other hand, as the Supreme Court has recognized in the patent context, disclosing valuable knowledge can "stimulate ideas and the eventual development of further significant advances" by those who did not gather that knowledge. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481 (1974). Deciding how long well data should remain confidential requires striking a balance between those two effects: Longer periods provide greater incentives to explore, but shorter periods allow companies to build on already-gathered information faster. That Congress sought to encourage the development of the Reserve's oil and gas resources therefore says little about the period of confidentiality that best effectuates that purpose.

"Faced with such a generalized congressional objective . . . , we cannot infer that Congress made a 'deliberate choice' to preclude state regulations that overlap with federal law." *In re Volkswagen*, 959 F.3d at 1221 (quoting *Arizona v. United States*, 567 U.S. 387, 405 (2012)); *see Virginia Uranium, Inc. v. Warren*, 587 U.S. 761,

778 (2019) (opinion of Gorsuch, J.) (cautioning against "elevat[ing] abstract and unenacted legislative desires above state law"). And as we have explained, Congress was aware of Alaska's role in regulating oil and gas exploration in general and drilling data in particular. The State shares Congress's goal of promoting the development of the Reserve—it is entitled to half of the federal government's revenue from the Reserve, *see* 42 U.S.C. § 6506a(*l*)—and Congress did not displace its judgment about how best to do so. *See MetroPCS*, 970 F.3d at 1118 ("'[T]he case for federal pre-emption' is 'less persuasive' when 'coordinate state and federal efforts exist within a complementary administrative framework[] and in the pursuit of common purposes.'" (alterations in original) (quoting *New York State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 421 (1973))).

ConocoPhillips points to a report the Department of the Interior prepared at the direction of Congress before Congress amended the Production Act to open the Reserve to private exploration. *See* U.S. Dep't of Interior, *Final Report of the 105(b) Economic and Policy Analysis* (1979) ("*105(b) Report*"). The report describes options and offers recommendations for exploration and leasing of the Reserve. *Id.* at 4, 8–10. Of particular relevance, it addresses the problem of "information externalities." *Id.* at 38. "[W]hen a firm explores a tract and the results become known in the industry," it says, "the exploring firm is not automatically compensated for the value of benefits accruing to competitors from knowledge concerning the explorer's discoveries." *Id*. For that reason, "the uncompensated information spillover may result in less exploration." *Id.* As ConocoPhillips emphasizes, the Department of the Interior suggested that data submitted to the government to fulfill a

lease condition should remain confidential for up to one year after the end of that lease. *Id.* at 57.

That recommendation—one of many made in a lengthy report that laid out a range of options for Congress—tells us little about whether or for how long *Congress* wanted to keep well data confidential. In the Production Act, Congress followed some of the Department of the Interior's recommendations but ignored others. *Compare 105(b) Report* 55, *and* 42 U.S.C. § 6506a(h) (Interior's recommendation to allow large lease tract sizes—which Congress followed), *with 105(b) Report* 56–57 (Interior's recommendation to require a minimum amount of exploration or production from lessees—which Congress did not follow). Because "'[t]he Supremacy Clause gives priority to "the Laws of the United States,"' not the priorities and preferences of federal officers or the 'unenacted approvals, beliefs, and desires' of Congress," we do not infer a preemptive purpose from those recommendations. *In re Volkswagen*, 959 F.3d at 1212 (citation omitted) (first quoting *Garcia*, 589 U.S. at 212; and then quoting *Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495, 501 (1988)).

ConocoPhillips also argues that Alaska's disclosure provisions conflict with the purposes of the Production Act because they interfere with federal government contracting by requiring oil and gas companies exploring the Reserve—who are parties to federal lease contracts—to submit data that the Commission may disclose before the federal government does. But even if this risk would deter some companies from entering into federal leases or agreeing to the same lease terms, the Constitution does not forbid all state statutes that have the effect of reducing the pool of possible parties to a federal contract. To be sure, state

regulation of federal employees or contractors violates the Supremacy Clause when it leads to "control by the state over federal government operations." *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 762 (9th Cir. 2025). And principles of obstacle preemption mean that burdens on federal contracting may violate the Supremacy Clause where federal law evinces an intent to give the federal government full discretion in a specific field. *See Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 761–63 (9th Cir. 2022) (en banc). Alaska's confidentiality and disclosure laws give the State no control over federal operations, and, as we have explained, the Production Act reveals no purpose that is obstructed by those laws.

**REVERSED.**