CARAWAY, J.
| iThe spouses in this case had a separate property regime, and both executed a suretyship agreement to secure the debt of the wife’s incorporated business venture. There were also two other co-sureties in the transaction. After the corporation’s default, the wife paid the entirety of the corporation’s debt and seeks payment in this action from her former husband of his virile share of the indebtedness. Rejecting the husband’s claim that his wife should be considered as the principal debt- or with himself as her surety, the trial court granted her a judgment in the amount of one-fourth of the indebtedness. The husband appeals, and for the following reasons, we affirm.

Facts

After seventeen years of marriage, Daniel C. Scarborough (“Daniel”) and Mary Alice Scarborough (“Mary Alice”) divorced on January 24, 2005. Them marriage was governed by a matrimonial agreement, dated December 17, 1987, which provided for a regime of separate property.
On October 20, 1994, Mary Alice, along with her friend, Lynda Mathis (“Lynda”), incorporated River Cities X-Ray, Inc. (“River Cities”), whereby Lynda became the president and Mary Alice, vice-president. The purpose of the corporation was to provide X-ray services to the local medical community. At the time of its inception, River Cities was wholly owned and operated by its two incorporators.
In January of 1995, within the course and scope of its operations, River Cities leased medical equipment from VGM Leasing, Inc. (“VGM”). |2In order to obtain the lease, VGM required River Cities to provide sureties to secure the transaction. Mary Alice and Daniel, along with Lynda and her husband, Michael Mathis, executed written guaranty agreements.
On September 18, 1997, nearly three years after the corporation’s creation, Mary Alice sold and assigned all of her shares of stock in River Cities to Lynda for approximately $9,000.
River Cities ultimately defaulted on its lease payments to VGM. VGM sued River Cities, along with the four guarantors. VGM obtained two separate judgments. *943 The first judgment was rendered on August 24, 1999, by default, against River Cities and the Mathises, who were unrepresented at the time. The second judgment obtained by VGM, on October 4, 1999, was a consent judgment against the Scarboroughs, who were still married at the time and represented by counsel. Each of these judgments held the individual guarantors liable, in solido, for the principal amount of $21,962.15 plus interest and attorney’s fees.
In August of 2008, Mary Alice, who was now divorced from Daniel, was forced to pay the VGM judgment debt in the amount of $52,662.77 in order to avoid seizure and sale of her home. In exchange for the payment, Mary Alice acquired the two judgments by act of transfer of judgments.
On September 10, 2008, Daniel filed this action seeking a court order to compel Mary Alice to cancel the recordation of the VGM consent judgment that remained an encumbrance on his property. He asserted that the inscription threatened a pending sale concerning his immovable property. In the alternative, Daniel sought a review of the underlying debt |nand a determination of whether he was obligated to pay any portion of the VGM debt because of his 1995 guaranty agreement.
At the hearing of these matters, the trial court ordered Daniel to pay Mary Alice the sum of $13,165.69, representing his virile portion, 25% of the debt, owed by River Cities to VGM. It is from this judgment that Daniel now appeals.

Discussion

Daniel argues that he is not obligated to pay Mary Alice any portion of the VGM judgment because the underlying debt for the lease agreement had been the separate obligation of Mary Alice. At trial and on appeal, both sides argued the application of Civil Code Article 1804. At oral argument, the parties were instructed by this court to brief Civil Code Article 3055. The former article concerns the liability relationship between solidary obligors while the latter concerns the liability among co-sureties. The articles provide as follows:
La. C.C. art. 1804. Liability of solidary obligors between themselves.
Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obli-gor.
A solidary obligor who has rendered the whole performance, though subro-gated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.
If the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties.
Art. 3055. Liability among co-sureties.
Co-sureties are those who are sureties for the same obligation of the same obli-gor. They are presumed to share the burden of the ^principal obligation in proportion to their number unless the parties agreed otherwise or contemplated that he who bound himself first would bear the entire burden of the obligation regardless of others who thereafter bind themselves independently of and in reliance upon the obligation of the former.
The guaranty contracts executed by the Scarboroughs and the Mathises amounted to contracts of suretyship. La. C.C. art. 3035; Commercial Nat'l Bank in Shreveport v. Pipe Sales of Shreveport, Inc., 600 So.2d 130 (La.App. 2d Cir.1992). *944 Suretyship creates a liability accessory to that of a principal debtor. Id.; La. C.C. art. 3036. Therefore, as a result of the VGM lease indebtedness, the four individuals executed the accessory contract of suretyship by which they bound themselves to the creditor to fulfill the principal obligation of River Cities. Their accessory contracts were made to provide security for the performance of the obligation of River Cities. La. C.C. art. 1913. The primary obligor for the VGM indebtedness was River Cities.
Since the four sureties in this case were not primary and solidary obligors for the principal contract, we find that Article 1804 does not govern this situation. Instead, the parties were co-sureties, and their responsibilities among themselves in the event of the default of the primary obligor, River Cities, is specifically addressed in Article 3055. Additionally, Civil Code Article 3056 provides that “[a] surety who pays the creditor may proceed directly on or by way of subrogation to recover from his co-sureties the share of the principal obligation each is to bear.” This is |sthe claim which Mary Alice made against Daniel, and the trial court determined his share to be one-fourth of the principal obligation.[1]
Under Article 3055, each of the four sureties is legally presumed to share in the debt owed to VGM in proportion to their number. The presumption that each surety owes his or her virile share may be rebutted upon the showing of either of two circumstances: (i) the parties agreed otherwise or (ii) there was an understanding that the first surety to bind himself would bear the entire burden. The latter is inapplicable to this case since both Daniel and Mary Alice signed the guaranty agreement together. In reference to whether a prior agreement existed, official comment (b) to Article 3055 provides, in pertinent part:
Parol evidence is admissible to overcome the presumption and to show that the sureties agreed among themselves that liability would be proportionately shared or that certain sureties were induced to make their contract with the understanding that others would entirely bear the burden.
At trial, the parties stipulated that no testimony was necessary, and the exhibits concerning the VGM transaction and the corporate ownership of River Cities were submitted into evidence. Therefore, there is no testimony that Daniel and Mary Alice reached a meeting of the minds or agreement that her personal obligation as surety for her corporation’s debt would alleviate Daniel from sharing in the burden of any portion of that debt upon the corporation’s default. There was also no written agreement between them to that effect. Instead, Daniel persists with the argument, ^tracking the last sentence of Article 1804, that the circumstances giving rise to the corporation’s debt concerned only Mary Alice’s interests, that the corporation’s debt and Mary Alice’s surety obligation were really one and the same, and that Mary Alice was therefore obligated for the entire indebtedness with Daniel considered only as her surety. As we have rejected the application of Article 1804 in this case, we must reject Daniel’s argument. Article 3055 requires that these co-sureties reach an agreement concerning their liability for their accessory obligations as sureties. Both expected that the corporation and its endeavors through *945 Mary Alice and other corporate agents would primarily perform the lease agreement and pay the lessor, VGM. The corporate obligation and Mary Alice’s obligation are not one and the same. The secondary obligations involving the personal liability by these parties fell under the presumption for sharing of the primary debt under Article 3055 in the absence of an agreement between the co-sureties. The circumstantial evidence asserted by Daniel does not amount to an agreement between the parties, and the ruling of the trial court assessing Daniel his virile share of the primary obligation is affirmed.
Finally, Daniel also assigns as error the failure of the judgment to order the cancellation of the inscription in the mortgage records from the consent judgment which is presently owned by Mary Alice. The present judgment merely decreed his $13,165.69 debt to Mary Alice, stating, inartfully, that it represented “his 25% of the virile portion owed by River Cities X-Ray, Inc. to VGM Leasing, Inc.” Since the judgment does not clearly reference the prior consent judgment against Daniel which now |7encumbers his property, we will amend the judgment as follows to allow for the cancellation of the judicial mortgage in the event of Daniel’s payment of this judgment:
IT IS ORDERED, ADJUDGED AND DECREED that Daniel C. Scarborough, TV shall pay Mary Alice Scarborough the sum of $13,165.69, with interest until paid, representing his obligation and virile share in that certain judgment dated October 4, 1999, entered in Case No. 436,147-A and recorded under Registry No. 1675488, Mortgage Book 2910, page 458 of the records of Caddo Parish, Louisiana. Upon proof of payment of this judgment to Mary Alice Scarborough, the clerk of court shall cancel the said October 4, 1999 judicial mortgage insofar as said judgment affects the interests of Daniel C. Scarborough, IV.
With this amendment to the trial court’s judgment, Daniel will be entitled to seek cancellation of the judicial mortgage pursuant to La. C.C. art. 3366 and La. R.S. 44:106, after Mary Alice’s acknowledgment and receipt of payment of this judgment.

Conclusion

For the foregoing reasons, the judgment of the trial court is amended and, as amended, affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.

. While Mary Alice’s appellate brief argues her entitlement to recovery of one-half of the VGM indebtedness from Daniel, she made no answer to the appeal seeking modification of the trial court’s judgment. Moreover, she presented no evidence at trial pursuant to Article 3056 regarding the insolvency of either of the remaining co-sureties.