# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2022

Lyle W. Cayce
Clerk

No. 21-30668

In the Matter of Falcon V, L.L.C.,

*Debtor*,

Argonaut Insurance Company,

*Appellant*,

*versus*

Falcon V, L.L.C.,

*Appellee*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:20-CV-702

Before Higginbotham, Higginson, and Oldham, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

This appeal arises out of the bankruptcy of Falcon V, LLC and its affiliates. After the bankruptcy court confirmed Falcon V's reorganization plan, Argonaut Insurance Company asked the court to interpret the plan, arguing primarily that a $10.5 million suretyship agreement was an "executory contract" and that the reorganized Falcon V had therefore

No. 21-30668

assumed the agreement under the reorganization plan's express terms. The bankruptcy court concluded that Falcon V had not assumed the agreement and disallowed Argonaut's $7.3 million unsecured claim against Falcon V. The district court affirmed the judgment of the bankruptcy court. We AFFIRM.

I.

The relevant facts are uncontested. Appellee Falcon V, LLC and its affiliates ORX Resources, LLC and Falcon V Holdings, LLC (collectively "Falcon V") engage in oil and gas exploration and development. Appellant Argonaut Insurance Company ("Argonaut") provides surety bonds.[1] Falcon V and Argonaut entered into an arrangement that the parties refer to as the "Surety Bond Program." Under the Surety Bond Program, Argonaut posted four irrevocable performance bonds (the "Bonds") guaranteeing Falcon V's obligations to various third-party obligees. These obligations related primarily to the plugging, abandonment, and restoration of oil and gas wells. The largest bond was in favor of Hilcorp Energy I LP, in the amount of $10,000,000. The other three bonds were in favor of Chevron Corporation, the Louisiana Office of Conservation, and the United States, in the amounts of $300,000, $250,000, and $25,000, respectively. The Bonds provide that if Falcon V fails to perform its obligations, Argonaut must either pay the obligee an amount equal to the obligation or perform the obligation itself, up to the amount of the bond. The Bonds further provide that "regardless of the payment or nonpayment by [Falcon V] of any premiums owing with respect to this Bond, [Argonaut's] obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by [Falcon

---

[1] "A surety bond creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee." *Ins. Co. of the W. v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001).

No. 21-30668

V] to pay any such premiums." In exchange, Falcon V agreed to pay premiums to Argonaut and to indemnify Argonaut for any payments that Argonaut makes under the Bonds (the "Indemnity Agreement").

In May 2019, Falcon V filed for Chapter 11 bankruptcy. On Falcon V's motion, the bankruptcy court authorized (but did not require) Falcon V to continue performing the obligations that it owed Argonaut as part of the Surety Bond Program.[2] Argonaut subsequently filed a proof of claim against Falcon V in the amount of $10,575,000 (the combined value of the Bonds). Argonaut stated that $3.2 million of the claim was secured and the rest was unsecured. Argonaut further stated its position that the Surety Bond Program "may not be assumed and assigned, for among other reasons, because such agreement constitutes a 'financial accommodation,'" although it reserved its rights in case the Bonds and Indemnity Agreement were deemed "executory contracts." On October 10, 2019, the bankruptcy court confirmed Falcon V's Second Amended Plan of Reorganization (the "Plan"), which stated that, with certain exceptions not relevant here, each reorganized Falcon V entity "shall be deemed to have assumed each executory contract . . . to which it is a party."

In February 2020, Argonaut sent Falcon V a letter requesting that, in accordance with section 12 of the Indemnity Agreement, Falcon V provide Argonaut with an additional $7.3 million of collateral in order to fully secure the Bonds. Falcon V refused, stating that Argonaut's claims against it had been discharged under the Plan. Argonaut then filed in the bankruptcy court a Motion to Interpret and Affirm the Terms of the Confirmed Chapter 11 Plan, arguing that the reorganized Falcon V had assumed the Surety Bond

---

[2] The bankruptcy court made clear that "nothing in this order or the Motion shall be deemed to constitute post-petition assumption or adoption of any agreement."

3

No. 21-30668

Program under the provision in the Plan stating that Falcon V assumed the executory contracts to which it was a party. Argonaut also argued that even if the Surety Bond Program had not been assumed, it had "passed-through" the bankruptcy.

The bankruptcy court issued an order concluding that the Surety Bond Program was not assumed under the Plan. The court reasoned that "because Argonaut owed no continuing performance to Falcon V, the surety bond program is not an executory contract," and it alternatively determined that even "if the surety bond program were executory, it is a non-assumable financial accommodation." The court ultimately ordered that Argonaut's unsecured claim against Falcon V (totaling over $7.3 million) was disallowed under 11 U.S.C. § 502(e)(1)(B), though it did note that Argonaut also held an allowed secured claim for $3.2 million. The bankruptcy court did not expressly address Argonaut's argument that if the Surety Bond Program had not been assumed it had nonetheless passed through the bankruptcy.

Argonaut appealed to the district court, which affirmed the bankruptcy court's judgment. The district court determined that "the parties' surety bond contracts are not executory contracts, and therefore cannot be assumed or enforced against [Falcon V]." The district court further stated that the bankruptcy court did not err by declining to expressly address whether the Surety Bond Program passed through the bankruptcy, explaining that "the pass-through (or 'ride-through') doctrine applies exclusively to *executory* contracts that are 'neither assumed nor rejected at bankruptcy.'"

Argonaut then appealed to this court.

## II.

"In reviewing a decision of the district court affirming the bankruptcy court, we apply 'the same standard of review to the bankruptcy court that the

No. 21-30668

district court applied,' reviewing [conclusions] of law *de novo* and findings of fact for clear error." *In re Provider Meds, L.L.C.*, 907 F.3d 845, 850 (5th Cir. 2018). Argonaut raises two issues on appeal. Argonaut primarily argues that the bankruptcy and district courts erred in determining that the Surety Bond Program was not assumed under the Plan. Alternatively, Argonaut argues that even if the Surety Bond Program were not assumed, the district court erred by determining that the Surety Bond Program did not "pass through" the bankruptcy.

## A.

We first consider whether Falcon V "assumed" the Surety Bond Program under the Plan. Subject to court approval, a debtor "may assume or reject any executory contract," 11 U.S.C. § 365(a); *see also id.* § 1107(a), and, as explained above, Falcon V's Second Amended Plan of Reorganization states that, with certain exceptions not relevant here, each of the reorganized Falcon V entities "shall be deemed to have assumed each executory contract . . . to which it is a party." Accordingly, the bankruptcy court ordered that "all executory contracts . . . of [Falcon V] shall be deemed assumed to the extent assumable under Bankruptcy Code section 365." Argonaut argues that the Surety Bond Program qualifies as an executory contract under Section 365 and that the bankruptcy and district courts therefore erred in determining that the Program was not assumed under the Plan.[3]

---

[3] Argonaut further argues that the bankruptcy court erred in concluding that even if the Surety Bond Program were an executory contract, it is unassumable because it is a financial accommodation. *See* 11 U.S.C. § 365(c)(2) ("The trustee may not assume or assign any executory contract . . . of the debtor . . . if . . . such contract is a contract to make a loan[] or extend other debt financing or financial accommodations."). Argonaut maintains that financial accommodations are assumable with the consent of the party

No. 21-30668

"The Bankruptcy Code does not define the term 'executory contract,' but we have concluded that a contract is executory if 'performance remains due to some extent on both sides' and if 'at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'" *In re Provider Meds*, 907 F.3d at 851 (citations omitted). In other words, "the test for an executory contract is whether, under the relevant state law governing the contract, each side has at least one material unperformed obligation as of the bankruptcy petition date." *In re Weinstein Co. Holdings LLC*, 997 F.3d 497, 504 (3d Cir. 2021). This definition of executory contracts was first proposed by Professor Vern Countryman and is known as the "Countryman test." *Id.*; *see* Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973).[4]

---

extending the accommodation. Because we ultimately hold that the Surety Bond Program is *not* an executory contract, we do not address this issue.

[4] The vast majority of circuits have adopted the Countryman test. *See Gallivan v. Springfield Post Rd. Corp.*, 110 F.3d 848, 851 (1st Cir. 1997); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989); *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1045 (4th Cir. 1985); *In re Chi., Rock Island & Pac. R.R. Co.*, 604 F.2d 1002, 1004 (7th Cir. 1979); *In re Interstate Bakeries Corp.*, 751 F.3d 955, 962 (8th Cir. 2014); *In re Pac. Express, Inc.*, 780 F.2d 1482, 1487 (9th Cir. 1986); *In re Baird*, 567 F.3d 1207, 1211 (10th Cir. 2009). However, both the Sixth and Eleventh Circuits have endorsed the "functional approach," under which "the question of whether a contract is executory is determined by the benefits that assumption or rejection would produce for the estate." *In re Gen. Dev. Corp.*, 84 F.3d 1364, 1375 (11th Cir. 1996) (quoting *In re Gen. Dev. Corp.*, 177 B.R. 1000, 1012 (S.D. Fla. 1995)); *see also Thompkins v. Lil' Joe Recs., Inc.*, 476 F.3d 1294, 1305 n.13 (11th Cir. 2007); *In re Jolly*, 574 F.2d 349, 351 (6th Cir. 1978). *See generally* 3 COLLIER ON BANKRUPTCY ¶ 365.02 (16th ed. 2020) (discussing the Countryman test and the functional approach); 2 NORTON BANKRUPTCY LAW & PRACTICE 3d §§ 46:6, 46:7 (same).

No. 21-30668

The Third Circuit has explained the logic behind the Countryman test as follows:

> To facilitate the debtor's rehabilitation, the Countryman test attempts to foolproof the debtor's choice to assume or reject contracts; thus, the debtor only has that flexibility for executory contracts—those contracts where there could be uncertainty about whether they are valuable or burdensome. A helpful perspective is to view executory contracts as a combination of assets and liabilities to the bankruptcy estate; the performance the nonbankrupt owes the debtor constitutes an asset, and the performance the debtor owes the nonbankrupt is a liability. Under this framework, a contract where the debtor fully performed all material obligations, but the nonbankrupt counterparty has not, cannot be executory; that contract can be viewed as just an asset of the estate with no liability. Treating it as an executory contract risks inadvertent rejection because the debtor would in effect be giving up an asset by rejecting it. On the other extreme, where the counterparty performed but the debtor has not, the contract is also not executory because it is only a liability for the estate. Treating it as an executory contract risks inadvertent assumption, for the debtor would effectively be agreeing to pay the liability in full when the counterparty should instead pursue the claim against the estate like other (typically unsecured) creditors. . . . Only where a contract has at least one material unperformed obligation on each side—that is, where there can be uncertainty if the contract is a net asset or liability for the debtor—do we invite the debtor's business judgment on whether the contract should be assumed or rejected.

*In re Weinstein Co. Holdings*, 997 F.3d at 504–05 (cleaned up).

In applying the Countryman test to this case, the bankruptcy and district courts focused on the obligations that Falcon V and Argonaut owed each other. They both concluded that even though Falcon V has a continuing obligation to pay premiums to Argonaut and to indemnify Argonaut for any

7

payments that Argonaut makes under the Bonds, the Surety Bond Program nonetheless does not satisfy the Countryman test's first prong because Argonaut has already posted the Bonds and does not owe further performance to Falcon V. As the bankruptcy court reasoned, "Argonaut posted bonds prepetition and owes no further performance to Falcon V. . . . [B]ecause Argonaut owed no continuing performance to Falcon V, the surety bond program is not an executory contract." Similarly, the district court stated that "as between [Falcon V] and Argonaut, the parties' obligations under the Surety Bond Program flow in one direction, *from* [Falcon V] *to* Argonaut. The Countryman test requires more for an executory contract: performance must remain due on *both* sides."[5]

Argonaut argues that the bankruptcy and district courts' application of the Countryman test "gives no practical effect to Argonaut's (and [Falcon V's]) unperformed duties to the obligees under the Bonds," and it urges us to "apply the Countryman framework in a manner that accounts for all obligations in a multiparty arrangement." At oral argument, Argonaut proposed that the Countryman test should be modified as follows for surety contracts: "Where the surety and the principal continue to owe obligations to the obligee, and the principal has not fulfilled its indemnity obligations to the surety, that is an executory contract." In the Surety Bond Program, Argonaut is the surety and Falcon V is the principal,[6] and Argonaut maintains

---

[5] While the bankruptcy court resolved this issue based solely on the Countryman test's first prong, the district court further determined that because "Argonaut's bonds are irrevocable," Falcon V's failure to perform would "*not* create a material breach that excuses Argonaut's performance, as required by the second prong of the Countryman test."

[6] *See Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed. Cir. 1985) ("A suretyship is the result of a three-party agreement, whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee."); *supra* Part I (describing the structure of the Surety Bond Program).

that because (1) both it and Falcon V remain obliged to the various third-party obligees and (2) Falcon V has not fulfilled its indemnity obligations to Argonaut, the Surety Bond Program qualifies as executory under this modified test.

We decline to adopt Argonaut's proposed modification to the Countryman test. Argonaut offers no authority in support of the modification, and it makes no attempt to explain how the modification would further the test's goal of "facilitat[ing] the debtor's rehabilitation" by giving debtors discretion to assume or reject those contracts "where there can be uncertainty if the contract is a net asset or liability for the debtor." *In re Weinstein Co. Holdings*, 997 F.3d at 504–05. Rather, Argonaut's proposed test seems designed simply to elevate the rights of sureties above those of other creditors.

However, we do agree with Argonaut that courts should apply the Countryman test to multiparty contracts in a flexible manner that accounts for the various obligations owed to *all* of the parties, rather than focusing exclusively on the flow of obligations between the debtor and the creditor. We can imagine cases in which, for example, a debtor might wish to assume a tripartite agreement under which it owes performance to a creditor, the creditor owes performance to a third party, and the third party owes performance to the debtor. Accordingly, when applying the Countryman test to this case, we consider not just the obligations that Falcon V and Argonaut owe to each other but also their respective obligations to the third-party obligees.

Recall that the Countryman test has two prongs. First, a contract is executory only "if 'performance remains due to some extent on both sides.'" *In re Provider Meds*, 907 F.3d at 851 (quoting *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)). Falcon V has a continuing obligation to pay

premiums to Argonaut and to indemnify Argonaut for any payments that Argonaut makes under the Bonds, and although Argonaut does not owe any further performance to Falcon V, since it has already posted the Bonds, Argonaut does have obligations to the various third-party obligees under the Bonds.[7]

Assuming that the Surety Bond Program satisfies the first Countryman requirement, the Program does not satisfy the second requirement: that "at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party." *In re Provider Meds*, 907 F.3d at 851 (quoting *In re Murexco Petroleum*, 15 F.3d at 62–63). After all, the Bonds are irrevocable,[8] meaning that even if Falcon V failed to perform its obligations under the Surety Bond Program, Argonaut would not be excused from its performance obligations to the obligees. And because Falcon V's failure to perform would not excuse Argonaut from performing, the Surety Bond Program fails the Countryman test, even when applied in this flexible manner.[9]

---

[7] The Surety and Fidelity Association of America argues in an amicus brief that Argonaut does in fact have a continuing obligation to Falcon V, namely "the obligation to maintain its license and other statutory and regulatory capital, surplus, and reserve requirements." However, Argonaut's obligation to comply with surety law is owed to Texas (whose laws govern the Surety Bond Program), not Falcon V. *See In re Coal Stripping, Inc.*, 215 B.R. 500, 502 (Bankr. W.D. Pa. 1997) (rejecting a similar argument on the ground that the sureties "owe their obligations to comply with West Virginia surety law to West Virginia, not to Debtor").

[8] As explained in *supra* Part I, the Bonds provide that "regardless of the payment or nonpayment by [Falcon V] of any premiums owing with respect to the Bond, [Argonaut's] obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by [Falcon V] to pay any such premiums."

[9] While the existing Countryman test, flexibly applied, is sufficient to resolve the question of whether the Surety Bond Program is an executory contract, we recognize that

No. 21-30668

The Surety Bond Program does not satisfy the Countryman test's second requirement. Accordingly, it is not an executory contract,[10] and the bankruptcy and district courts correctly determined that it was not assumed under the Plan.

## B.

Argonaut alternatively argues that even if Falcon V did not assume the Surety Bond Program, the Program is enforceable against them because it passed through the bankruptcy unaffected under the "pass-through" or "ride-through" doctrine. This argument might have merit if the Surety Bond Program were an executory contract that had been neither assumed nor rejected. *See ASARCO, L.L.C. v. Mont. Res., Inc.*, 858 F.3d 949, 959 (5th Cir. 2017) ("Executory contracts that are not assumed or rejected 'ride through' the bankruptcy 'unaffected by the bankruptcy proceedings.'" (quoting *In re O'Connor*, 258 F.3d 392, 405 (5th Cir. 2001))). However, "nonexecutory contracts . . . are not subject to assumption, rejection, or the ride-through doctrine." *Id.* Because, as explained above, the Surety Bond Program is not an executory contract, Argonaut's alternative argument is unavailing.

---

in future multiparty contracts cases, it may make sense for courts to modify the test, and we note that because neither party asked us to apply the "functional approach," *see supra* note 4, to this case, future courts should not consider foreclosed the possibility that the functional approach should be adopted for multiparty contract cases.

[10] At least one district and three bankruptcy courts have also concluded that surety agreements similar to the Surety Bond Program do not qualify as executory contracts, although not necessarily under the same reasoning as ours. *See In re James River Coal Co.*, No. 306-0411, 2006 WL 2548456, at *4 (M.D. Tenn. Aug. 31, 2006); *In re All Phase Elec. Contracting, Inc.*, 409 B.R. 272, 275 (Bankr. D. Conn. 2009); *In re Maxon Eng'g Servs., Inc.*, 324 B.R. 429, 432 (Bankr. D.P.R. 2005); *In re Coal Stripping, Inc.*, 215 B.R. at 502–03 (Bankr. W.D. Pa. 1997). *But see In re Evans Prods. Co.*, 91 B.R. 1003, 1005–06 (Bankr. S.D. Fla. 1988) (concluding without analysis that a surety agreement was "clearly executory").

No. 21-30668

## III.

For the foregoing reasons, the district court's judgment is AFFIRMED.