# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 19, 2025

Lyle W. Cayce
Clerk

No. 24-20347

Lexon Insurance Company, Incorporated,

*Plaintiff—Appellant*,

*versus*

Chevron U.S.A. Incorporated; Sojitz Energy Venture, Incorporated; BP America Production Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-990

Before Southwick, Oldham, and Ramirez, *Circuit Judges*.
Irma Carrillo Ramirez, *Circuit Judge*:

After the holder and operator of an offshore oil and gas lease defaulted on its well decommissioning obligations, its surety was required to pay the federal government over $11 million. The surety, Lexon Insurance Company, Inc., sued the prior leaseholders for reimbursement, but the district court dismissed its claims. We AFFIRM the dismissal.

No. 24-20347

I

In 1983, a predecessor of BP America Production Company obtained from the United States an oil and gas lease for West Cameron Block 168, a portion of the Outer Continental Shelf (OCS) located off the Louisiana coast. Chevron U.S.A. Inc. ultimately acquired the lease, and it was granted a right-of-way (ROW) for construction of a pipeline in connection with the lease. Chevron assigned record title to the lease and ROW to Linder Oil Company under the terms of a subsequent Purchase and Sale Agreement in 2005, but it retained the deep operating rights. Linder Oil in turn agreed to assume all decommissioning obligations[1] under the lease and to indemnify Chevron for any related liability.

Linder Oil immediately assigned its interest in the lease to Reserves Management, L.C. and Destin Resources, LLC, which designated Linder Oil as the operator of the shallow rights under the lease (excluding Chevron's deep operating rights), but it held the ROW. Reserves and Destin each conveyed half of their respective interests in the lease to Sojitz Energy Venture, Inc., which also designated Linder Oil as the operator for the shallow rights; in 2015, Sojitz transferred its interests in the lease back to Reserves and Destin. Linder Oil agreed to release Sojitz from all

---

[1] Applicable federal regulations mandate that all offshore wells, platforms, pipelines, and other facilities on the OCS must be decommissioned after the lease ends. *See* 30 C.F.R. §§ 250.1702–1703. All lessees and operators, past and present, are jointly and severally liable for these decommissioning obligations. *See id.* at §§ 250.1701; 556.604; *see also id.* at § 556.710 ("Even after assignment, BOEM . . . may require [an assignor] to bring the lease into compliance if your assignee or any subsequent assignee fails to perform any obligation under the lease, to the extent the obligation accrued before approval of your assignment.").

decommissioning obligations arising under the lease and to indemnify it for any related claims.[2]

The Bureau of Ocean Energy Management (BOEM) subsequently required Linder Oil to provide performance bonds to secure the decommissioning obligations under the lease. Its surety, Lexon, issued eight performance bonds with an aggregate penal sum of $11,163,300 in favor of the United States in March 2016, to secure Linder Oil's decommissioning obligations. Lexon required Linder Oil to post collateral as security for its bond obligations, and Linder Oil obtained two letters of credit totaling $9,985,500, with Lexon as beneficiary, from a Louisiana bank. After the bank was closed by Louisiana regulators, the FDIC took over, and it notified Lexon that it was repudiating the letters of credit.

Linder Oil, Reserves, and Destin filed a Chapter 7 bankruptcy proceeding in 2017. Destin and Reserves held record title interest in the lease and Linder Oil held the ROW when both ended in 2018. BOEM notified the bankruptcy trustee that Linder Oil had failed to complete its decommissioning obligations under the lease and ROW and ordered forfeiture of the bonds. Lexon paid the aggregate penal sum of the bonds to BOEM, which transferred the funds to Sojitz and Chevron, and they completed the decommissioning work at a cost exceeding the sum of the bonds.

Lexon sued Chevron, Sojitz, and BP America (Defendants) for reimbursement of the full amount of the bonds under theories of subrogation,

---

[2] The parties agreed that Sojitz would be responsible for no more than $2,700,000 for decommissioning obligations, and that payment was contingent on Linder Oil providing an Authority for Expenditure (AFE) approved by Sojitz. It is undisputed that Linder Oil never submitted an AFE prior to its bankruptcy.

contribution, and unjust enrichment.[3] The parties both moved for summary judgment based on a joint stipulation of facts. A magistrate judge recommended entry of summary judgment for Defendants, finding that Lexon was not entitled to reimbursement based on subrogation because (1) Louisiana does not recognize equitable subrogation; (2) Lexon, as surety of the principal obligor, has no right to legal subrogation under Louisiana law; and (3) 31 U.S.C. § 9309 does not provide subrogation rights against anyone other than a surety's principal. He also found that Lexon was not entitled to contribution from Defendants because it does not have a right of contribution from sub-sureties who are indemnified by the surety's principal, and that Lexon could not recover based on unjust enrichment because any enrichment to Defendants for decommissioning obligations was contractually justified. Over Lexon's objections, the district judge adopted the magistrate judge's recommendation in its entirety and dismissed Lexon's claims against Defendants.[4]

On appeal, Lexon argues that (1) it is entitled to reimbursement from Defendants based on subrogation under federal law; (2) even if Louisiana law applies, it is entitled to relief under the state's "legal subrogation" remedy; and (3) it is entitled to recover on its alternative claims for contribution and unjust enrichment under Louisiana law.

II

We review grants of summary judgment de novo, applying the same legal standards as the district court. *See Colony Ins. Co. v. First Mercury Ins.*

---

[3] Lexon also sued two individuals affiliated with Linder Oil who had executed an indemnity agreement in favor of Lexon, but its claims against them are not at issue here.

[4] Lexon also asserted a claim for equitable subordination, but by not challenging its dismissal, Lexon has forfeited the claim. *See Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021).

*Co.*, 88 F.4th 1100, 1106 (5th Cir. 2023). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.*, 73 F.4th 322, 327 (5th Cir. 2023) (citation omitted).

## III

The Outer Continental Shelf Lands Act (OCSLA) extends the laws and jurisdiction of the United States to the subsoil and seabed of the OCS, including any artificial structures permanently or temporarily attached thereon. 43 U.S.C. § 1333(a)(1). "All law on the OCS is federal, and state law serves a supporting role, to be adopted only where there is a gap in federal law's coverage." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 616 (2019). When there is a gap to fill in federal law, the law of the adjacent state applies as surrogate federal law to the extent that it is not inconsistent with federal laws and regulations. *Id.* § 1333(a)(2)(A); *see also Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 358–60 (1969). But if a federal law has addressed a particular issue, a state law addressing the same issue cannot be adopted as surrogate federal law because it would "necessarily be inconsistent with existing federal law." *Parker Drilling*, 587 U.S. at 610.

All parties agree that OCSLA governs this dispute and that Louisiana law applies to fill any federal-law gaps. Lexon contends that federal law, either through 31 U.S.C. § 9309 or federal common law of equitable subrogation, addresses all relevant aspects of its subrogation claim.

## A

Section 9309, titled "Priority of sureties," states in full:

> When a person required to provide a surety bond given to the United States Government is insolvent or dies having assets insufficient to pay debts, the surety, or the executor, administrator, or assignee of the surety paying the Government the amount due under the bond--(1) has the same priority to amounts from the assets and estate of the person as are secured for the Government; and (2) personally may bring a civil action under the bond to recover amounts paid under the bond.

31 U.S.C. § 9309. Lexon argues that § 9309 addresses its subrogation claim because the statute "enables a surety who is compelled to pay the government under a bond securing its principal's governmental obligations to obtain reimbursement from any party whom the government lawfully could have forced to satisfy those obligations." Its reliance on this statute is misplaced.

Section 9309, by its plain text and title, establishes the priority and recovery rights of a surety that has paid the United States the amount due under a bond. *See In re Tri-Union Dev. Corp.*, 479 B.R. 425, 443 (Bankr. S.D. Tex. 2012) ("The statute codifies the priority of sureties when a principal obligor is insolvent or dies having assets insufficient to pay debts."); *cf. Almendarez–Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks omitted)). When read in its entirety, § 9309 confers on a surety that pays its principal's debt to the United States the same priority as the United States to the insolvent principal's assets and estate; it authorizes the surety to bring a civil action personally "under the bond" for the recovery of the amount paid. *See In re J. Menist Co.*, 289 F. 229, 231 (2d Cir. 1923) (explaining that the

predecessor statute to § 9309[5] "merely gives to the surety the right to bring suit in its own name for the recovery of all moneys which the surety has paid, and it gives him in addition the same priority in the assertion of that right which is given to the United States").

Contrary to Lexon's suggestion, § 9309 does not broadly authorize a surety to file suit against *any* party for the recovery of amounts paid to the government. Instead, the surety is limited to bringing "a civil action *under the bond.*" 31 U.S.C. § 9309 (emphasis added). Generally, "[a] surety bond creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee." *Matter of Falcon V, L.L.C.*, 44 F.4th 348, 351 (5th Cir. 2022) (quoting *Ins. Co. of the W. v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001)). Because Defendants are not parties to the bonds, Lexon cannot seek subrogation against them under § 9309.

## B

Lexon next argues that the laws of the United States that the OCSLA extends to the OCS encompass "established federal common" like equitable

---

[5] The predecessor statute, § 3468 of the Revised Statutes, is substantially similar to the current version:

> Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States, and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon.

subrogation. It is true that "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136 (1962). "Congress made clear provision for filling in the 'gaps' in federal law [with state law, however]; it did not intend that federal courts fill in those 'gaps' themselves by creating new federal common law." *Chevron Oil Co. v. Huson*, 404 U.S. 97, 104–05 (1971). "This policy of federal deference reflects the Congress's recognition of the special relationship which exists between the [OCS] and the adjacent states." *Matte v. Zapata Offshore Co.*, 784 F.2d 628, 631 (5th Cir. 1986). Indeed, both the Supreme Court and this circuit have consistently recognized that state law, not "federal common law," applies as surrogate federal law under the OCSLA. *See id.* at 104 & n.8 ("[F]ederal courts should not create interstitial federal common law when the Congress has directed that a whole body of state law shall apply."); *Fontenot v. Dual Drilling Co.*, 179 F.3d 969, 977 (5th Cir. 1999) ("[O]ur Circuit has consistently rejected attempts of litigants to have 'federal common law' override rules of Louisiana tort law in actions arising on fixed platforms on the [OCS]." (citing cases)).

Because no federal statute governs the precise issue of a surety's right to seek subrogation from non-parties to bonds given to the United States that secure the performance of obligations on the OCS, a gap in federal law exists. The OCSLA mandates that this gap be filled by the laws of the adjacent state, "to the extent they are applicable and not inconsistent with" federal law. 43 U.S.C. § 1333(a)(2)(A). Lexon does not assert that Louisiana law is inconsistent with federal law. The district court was therefore correct to turn to Louisiana law to analyze the substance of Lexon's subrogation claim.

IV

Lexon asserts that the district court erred in concluding that it is not entitled to recover from Defendants under Louisiana's "legal subrogation" remedy. We disagree.

Under Louisiana law, a "surety who pays the principal obligation is subrogated by operation of law to the rights of the creditor." LA. CIV. CODE art. 3048. Article 1829 of the Louisiana Civil Code, in turn, specifies the limited circumstances where subrogation occurs by operation of law. *See Wilhite v. Schendle*, 92 F.3d 372, 377 (5th Cir. 1996) ("The five instances in which 'legal' subrogation may occur are specifically listed in LA. CIV. CODE art. 1829."). As relevant here, "[s]ubrogation takes place by operation of law . . . [i]n favor of an obligor who pays a debt he owes with others or for others and who has recourse against the others as a result of the payment." LA. CIV. CODE art. 1829(3).

"Article 1829(3) is an exception to the general rule that subrogation does not take place when a third person pays the debt of another." *Martin v. La. Farm Bureau Cas. Ins. Co.*, 638 So.2d 1067, 1068 (La. 1994); *accord A. Copeland Enters., Inc. v. Slidell Mem'l Hosp.*, 657 So. 2d 1292, 1297 (La. 1995); *see also* LA. CIV. CODE art. 1855 (stating general rule that "[p]erformance rendered by a third person effects subrogation only when so provided by law or agreement"). For legal subrogation to exist under the provision, "the obligor must have a recourse against the other obligors with whom or for whom he is bound." Saul Litvinoff, *Subrogation*, 50 LA. L. REV. 1143, 1170 (1990). "Due to the exceptional nature of subrogation by operation of law, the right is strictly construed." *Martin*, 638 So.2d at 1068.

Here, the district court determined that Lexon was not entitled to legal subrogation under Article 1829(3) because it had failed to show it has any right of recourse against them "as a result of" its payment under the

No. 24-20347

bonds. Lexon does not challenge the court's conclusion that it lacks recourse against Defendants based on its payment. It instead argues that the district court misconstrued the scope of its legal subrogation rights under the Civil Code. This argument lacks merit.

Lexon asserts that Article 1829(3) does not specifically limit the scope of rights to which a paying surety is subrogated under Article 3048, but the Louisiana Supreme Court has made clear that "the effects of legal subrogation are circumscribed and carefully spelled out in the Civil Code." *State Farm Mut. Auto. Ins. Co. v. Berthelot*, 732 So. 2d 1230, 1233 (La. 1999). Further, Civil Code articles on the same subject matter must be interpreted in reference to each other. LA. CIV. CODE art. 13 ("Laws on the same subject matter must be interpreted in reference to each other."); *see also St. James Bank & Tr. Co. v. S & H Enters., Inc.*, 532 So. 2d 915, 916 (La. Ct. App. 1988) (reading Article 3048 in conjunction with a different subrogation provision because they deal with the same subject matter). The district court correctly applied Louisiana law when it concluded that Lexon was not entitled to legal subrogation.

V

Lexon asserts an alternative claim for contribution under Article 3055. It states:

> Co-sureties are those who are sureties for the same obligation of the same obligor. They are presumed to share the burden of the principal obligation in proportion to their number unless the parties agreed otherwise or contemplated that he who bound himself first would bear the entire burden of the obligation regardless of others who thereafter bind themselves independently of and in reliance upon the obligation of the former.

10

LA. CIV. CODE art. 3055. "The presumption that each surety owes his or her virile share may be rebutted upon the showing of either of two circumstances: (i) the parties agreed otherwise or (ii) there was an understanding that the first surety to bind himself would bear the entire burden." *Scarborough v. Scarborough*, 25 So. 3d 941, 944 (La. Ct. App. 2009).

Lexon argues it is entitled to judgment as a matter of law on Defendants' liability for their proportional share of amounts it paid under the bonds. But the very premise of the claim—a shared, equal burden—is absent here. Lexon does not point to any evidence showing it was a "co-surety" with any defendant. Even if Defendants were co-sureties under Article 3055, Linder Oil's agreement to assume the decommissioning obligations and to indemnify Defendants for claims based on the obligations rebuts any presumption that they agreed to "share the burden of the principal obligation."

## VI

Lexon generally argues that the record evidence establishes all the elements for unjust enrichment.

In Louisiana, "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." LA. CIV. CODE art. 2298. To establish a claim for unjust enrichment, a plaintiff must show "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other available remedy at law." *Zeising v. Shelton*, 648 F. App'x 434, 437 (5th Cir. 2016) (quoting *Pinegrove Elec. Supply Co. v. Cat Key Const., Inc.*, 88 So.3d 1097, 1100 (La. Ct. App. 2012)). "If there is a contract between the parties it serves as a legal cause, an explanation, for the enrichment. Only the unjust enrichment for which there is no justification in law or contract allows equity a role in the

adjudication." *Edwards v. Conforto*, 636 So.2d 901, 907 (La. 1993), *on reh'g* (May 23, 1994) (citation modified).

Here, the undisputed summary judgment evidence shows that Lexon's payment is based on bonds it issued to secure Linder Oil's decommissioning obligations, and any enrichment enjoyed by Defendants in avoiding those costs resulted from their bargained-for indemnity agreements with Linder Oil. Given these business transactions, there is a sufficient "justification in law" for any enrichment of Defendants by Lexon paying for decommissioning obligations arising out of the lease. *See Edwards*, 636 So. 2d at 907 ("The justification or cause for the lessor's enrichment was the contractual agreement between the parties.").

\* \* \*

The judgment of the district court is AFFIRMED.